EBE WALTER, Adm'r. of PEMBERTON BURTON *vs.* JAMES F. MILLER and NANCY DERRICKSON.

Trover will lie against an administrator personally for a conversion by him, though the property came to him with the estate of his intestate.

CAPIAS Trover.    Pleas, Not guilty, and Act of limitations.    Issues. This was an action of trover brought for four negro slaves.    The

first count laid the property in P. Burton, and the conversion in his life time. The second count laid the property in Burton, and the conversion by defts. since his death; and the third count laid the property in the adm'r. Walter, and the conversion since the death of Burton.

The proof established that Pemberton Burton married the daughter of Capt. Wm. Derrickson, who gave these negroes to the wife of Burton. The negroes went into the possession of Burton and remained in his possession after the death of his wife and during all his life. After his death, they were taken back by Capt. Derrickson. Defts. are his adm'rs. and have refused on the application of plff. to give them up; but have sold them as a part of the estate of Derrickson.

On this evidence, *Cullen* for defts. moved for a nonsuit. The declaration in all the counts states the conversion by defts. The proof establishes a conversion by Capt. Derrickson in his lifetime. Can the action be sustained? It is a tort—dies with the wrong-doer. The defts. found the property in the possession of their intestate, and appraised it as such. Can they be made liable as wrong-doers for this? The plff. has his remedy in another form of action for money had and received, to recover the value. Trover does not lie against an ex'r. for a conversion in the testator's lifetime. 1 *Cowp.* 371.

We admit that the cause of action survives under our act of Assembly, but the conversion is here charged upon the defts. and not a conversion by the testator. The plffs. might bring an action for the conversion by the intestate, and a recovery here could not be a bar to that action. *Saund. Ev.* 886, 855.

*Frame* for plff. We have not charged a trover and conversion by Derrickson, and we did not mean to do it. Every man is answerable for his own torts, and we mean to make these defts. answerable for their tort. We care not whether they be adm'rs. or not, they are wrong-doers, and we hold them answerable for the tort individually. We do not charge them as adm'rs., but personally; and the fact of their being the adm'rs. of a man who has committed a tort, shall not excuse their own tort. The case in *Cowper* is very different. The question there, was whether the adm'r. could be held answerable for the torts of his intestate, and we recognize the law of that case, at least until our act of Assembly altered it, and prevented the abatement of the action. But there is in this case, not only a constructive, but an actual conversion. It is the law that if a person gets possession of the property of another, and uses it not only as his own, but as the property of another, it is a conversion. 2 *Saund. Pl. and Ev.* 881.

*Parsons*; the legal liability of the tenant to pay to the adm'r., and his undertaking to pay.

(See form of declaration for ex'rs. Rent due from deft. 25th March, 1789, to 25th June, 1789. The testator died in the middle of the quarter. In a suit by ex'r. of a termor for rent which became due after the death of the testator, &c." *Impeys. Plead.* 360; 1 *Chitty Pl.* 11, 38-9.)

*Rogers* for defts. in reply. The question is, whether an action can be brought against an adm'r. for a conversion in the lifetime of his intestate. Never was there such an action sustained. How came it to be decided in *Cowper,* that an action would not lie for the tort of the intestate, if a suit could be brought against the adm'r. so as to charge him personally? The claim is essentially against the estate of Derrickson. There can be but one conversion of the property. No suit can be brought to charge a man personally, where the property comes to him as an adm'r.; otherwise, the case in *Cowper* could not have arisen. How is an adm'r. to be protected? He is bound to appraise all the estate of his intestate, and a recovery against him personally, would not relieve him from his liability to the estate. And suppose a recovery in such a suit; it vests the property in them individually. The action proceeds on the ground of an individual claim of property in their own right, which is not so. It would change the whole course of the law in relation to the administration of estates. Under our act of Assembly, the remedy was a plain one; an action against the adm'rs. for a conversion by their intestate. This could not be done at common law, according to the case in *Cowper;* but it may under our act of Assembly. The record of a recovery here, could afford no evidence to discharge the adm'rs. of their liability to the estate, nor would it prevent another recovery for a conversion by the intestate.

By the Court.—The question is a very plain one: whether a man, being an adm'r., getting possession of the property of another, and refusing to give it up, can be sued for this individually. There may be more than one conversion. Before our act of Assembly you could not sue the adm'r. for a conversion by the intestate; and, if such an action as this would not lie, the party would have been remediless. At all times a conversion by the adm'r. was ground for an action against him. It is probable, that in the case in *Cowper,* the desire was to come at the intestate's estate; perhaps the adm'r. was not solvent. Wherever a man finds his property in the hands of another, who refuses to give it up, he may sue him in this form of action. Whether the deft. claims the property as his own or as another's, it is a conversion. *Saund. Pl. and Ev.* 475. If Derrickson had changed the property into money, an action for money had and received would lie. A recovery here, would prevent another recovery against Derrickson for a conversion in his lifetime, for it could be pleaded to such an action; and as to the relief of the adm'rs. on a recovery in this action, it would only be necessary to show the Register that the property had been recovered, and he would credit them with it. The conversion of property by an intestate in his lifetime, might exhaust it; hence the necessity of coming at his estate after his death, which occasioned the struggle to get such an action allowed, which was refused by the case in *Cowper.* The property comes to deft's. hands in specie, and they refuse to give it up; they claim it in right of another, but this makes them guilty of a conversion individually, as the property is in specie in their hands. There is no express proof of a conversion by Capt. Derrickson. The proof is, that the negroes went into his possession

after the death of Mr. Burton; no demand is proved, and for aught appearing, he may have been in the possession by permission of Burton's adm'r.

The nonsuit was *refused*, and eventually the plff. obtained a verdict and judgment for $175 damamages.

*Frame*, Attorney General, for plff.; *Cullen* and *Rogers* for defts..